**The below described is SIGNED.**

**Dated: February 08, 2007**

**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: <br><br> DANIEL J. KNIGHTON, <br><br> Debtor. | Bankruptcy No.: 05-27655 <br><br> Chapter 7 |
| In re: <br><br> CARLA NAN KNIGHTON, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL J. KNIGHTON, <br><br> Defendant. | Adversary Proceeding No.: 05-2532 <br><br> Judge Judith A. Boulden |

## MEMORANDUM DECISION

Before the Court is Plaintiff Carla Knighton's Complaint Objecting to Dischargeability of Indebtedness under § 523(a)(5) of the Bankruptcy Code (Complaint).[1] The Decree of Divorce (Divorce Decree) between the parties entered on November 19, 1992 required the Defendant to

---

[1] Future statutory references are to title 11 of the United States Code as it existed prior to the general effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 unless otherwise noted.

make four different sets of payments to the Plaintiff: (1) child support payments of $1,100/month subject to review when the eldest minor child reached majority; (2) alimony payments of $400/month for 15 years; (3) "property settlement" payments of $400/month for 15 years; and (4) payments into an IRA account of $100/month for 15 years. The parties have stipulated to the nondischargeability of the child support and alimony payments. Therefore, the only remaining issue for the Court's resolution is whether the additional property settlement and IRA account payments totaling $500/month are actually in the nature of maintenance or support and thus nondischargeable under § 523(a)(5).

The Court received evidence and heard argument at trial and took the matter under advisement. The Court has now considered the evidence properly before it, has judged the credibility of the witnesses, and has made an independent inquiry into applicable case law. Now being fully advised, the Court hereby issues the following Memorandum Decision.

## I. FACTS

The Defendant filed for divorce from the Plaintiff in July 1991. The Plaintiff was employed by Knighton Optical when the divorce action was first filed but was fired by the Defendant at some point between the filing of the divorce action and entry of the final Divorce Decree on November 19, 1992. The Divorce Decree awarded joint care and custody of the parties' three minor children, but physical care and custody of the children was awarded to the Plaintiff. The Divorce Decree also states that child support payments of $1,100/month were "based on the [Defendant's] income of approximately $5,000 per month and the [Plaintiff's] imputed income of $850.00 per month."[2]

---

[2] The minor children were 15, 12, and 10 when the Divorce Decree was entered.

As the Plaintiff testified at trial in the present case, her imputed income of $850/month was based solely on minimum wage. The Plaintiff also testified that although she had found part-time employment with an Ogden hotel convention center for approximately six or seven months during the course of the divorce action, she had been injured, had undergone shoulder surgery, was undergoing physical rehabilitation, and was receiving only workman's compensation at 70% of her original wages at the time the Divorce Decree was entered. Even during her term of employment with the convention center, she did not actually earn $850/month. She did not obtain new employment with a restaurant in Ogden until about a year after entry of the Divorce Decree.

In addition to child support and alimony payments totaling $1,500/month, the Divorce Decree required the Defendant under the section labeled "Personal Property" to pay the Plaintiff $400/month "as and for property settlement" and to contribute $100/month to the Plaintiff's IRA account. Other divisions of property are also contained in the Personal Property section of the Divorce Decree — the Plaintiff received a van, a Buick, the Lincoln Trust Account, and the right to obtain eyewear from Knighton Optical at cost while the Defendant received a truck and interests in the Camper World and Timber Lake properties.[3] Most notably, the Defendant was awarded "all right, title and interest in the business known as 'Knighton Optical'. All corporate or stock shares in that business will be signed over by the Defendant, if there is anything in her name. The [Plaintiff] is waiving any claim she may have against Knighton Optical by way of the property settlement for back due wages and overtime." Under the section of the Divorce Decree

---

[3] The subsequent section of the Divorce Decree is labeled "Real Property." In that section, the Plaintiff was awarded the marital home while the Defendant was awarded two rental properties acquired during the term of the marriage.

labeled "Debts and Obligations," the Defendant was also "ordered to pay the parties' debts and obligations incurred during the term of the marriage and prior to the parties' separation, and [was] ordered to hold the [Plaintiff] harmless from the same."

The Divorce Decree was based on an agreement between the parties, but the parties' testimony in this case differed substantially as to their alleged intent with respect to the Divorce Decree. The Plaintiff testified several times that, although she had essentially no direct involvement in the settlement negotiations and found its terms unfair, she ultimately agreed to entry of the stipulated Divorce Decree because she no longer had the financial or emotional resources to contest the matter any further. She wanted to place the divorce behind her, and her general understanding of the parties' intent was that the Defendant's obligations in the Divorce Decree would help her and her children survive. The Defendant testified specifically as to the parties' alleged intent with respect to the property settlement and IRA account payments. The Defendant testified that the Plaintiff was "aggressively" pursuing business records regarding ownership of Knighton Optical and payroll records regarding the amount of Social Security contributions that Knighton Optical had made on the Plaintiff's behalf during her term of employment. She allegedly agreed to cease her pursuit of any interest in Knighton Optical in exchange for $400/month in property settlement payments, and she allegedly agreed to cease other legal actions regarding her Social Security contributions in exchange for $100/month in IRA account payments. Although the Plaintiff did not recall any "aggressive" pursuit of documents, she did state that "there was a short period where [her attorney] tried to get some documentation together." She did not recall whether she ever saw any such documentation or if her attorney ever received any.

The Plaintiff testified several times that the combined $2,850/month from actual payments and imputed income was barely sufficient to sustain herself and her three children.[4] She also testified that she had no savings, that she used all of the money designated as IRA account payments for living expenses, and that she spent her money on essentials such as housing, food, utilities, and medical bills. But she never defaulted or became delinquent on any of the debts for which she was liable, and the Defendant made all payments on the marital obligations as required by the Divorce Decree. For his own part, the Defendant testified that he moved into the basement of his parents' house in Layton after he filed for divorce and that his financial situation was "very, very tight" after the divorce. There was no testimony or other evidence regarding the amount of the Defendant's disposable income or debt service at the time of the divorce other than the Defendant's admission that he paid no rent during the unspecified period of time during which he lived in his parents' basement.

Apart from her own testimony, the only evidence submitted by the Plaintiff regarding her expenses at the time of the divorce was photocopies of 18 checks written in 1995 for miscellaneous routine monthly expenses.[5] On a monthly basis, these checks and certain estimates made by the Plaintiff and accepted by the Defendant for purposes of argument indicate

---

[4] Actually, the Plaintiff initially testified as follows on direct examination regarding the combined amounts from only the imputed income, child support payments, and alimony payments without including the property settlement and IRA account payments: "Was this enough money to survive on and live comfortably? It was very difficult." But the Plaintiff's testimony after this initial statement was consistent that the full $2,850 was necessary for herself and her children on a monthly basis.

[5] The Plaintiff testified regarding her recent efforts to obtain documentation for her expenses at the time of the divorce but had no success due to her own and third parties' destruction of records during the nearly 15 years that has elapsed since entry of the Divorce Decree. She only found the 18 checks submitted in this case by "fluke" in a collection of other records in her possession.

payments of $750.00 for the home mortgage; $248.58 for utilities; $350.00 for food; $34.00 for pharmacy co-payments; and $100.00 for car insurance premiums. The total of these expenses is $1,482.58/month.[6] On direct examination, the Defendant testified that the amounts contained in the 1995 checks appeared consistent with and were "probably very close" to amounts being paid for expenses in 1992.[7]

## II. DISCUSSION

**A.  Legal Standard and Burden of Proof**

The Tenth Circuit set forth a two-part test in *Sampson v. Sampson*[8] for § 523(a)(5) actions, and whether an obligation is "support" is a question of fact determined solely in accordance with federal bankruptcy law.[9] The *Sampson* test first requires the Court to divine the parties' shared intent as to whether the obligation was intended as support. Although the Divorce Decree is instructive on the question, this Court is required to look beyond the words and labels of the Divorce Decree in resolving the issue of intent.[10] The inquiry also does not turn on one

---

[6]   The Plaintiff also testified that her Buick was encumbered for about a year following the divorce until it was paid off, but there was no testimony or other evidence regarding the amount of the debt service on the vehicle.

[7]   There was some controversy as to the amortization period for the Plaintiff's car insurance premium and whether the water/sewer/garbage bill from Clearfield City was monthly or bi-monthly. There was also some question as to whether the Plaintiff continued to have cable television service following entry of the Divorce Decree, although Exhibit 7 was a $25.00 check to TCI which the Defendant testified was the parties' cable television service provider during the marriage. The above calculations are based on resolution of all numerical issues and estimates in favor of the Plaintiff as assumed by the Defendant for purposes of argument.

[8]   997 F.2d 717 (10th Cir. 1993).

[9]   *Id.* at 721.

[10]   *Dewey v. Dewey (In re Dewey)*, 223 B.R. 559, 566 (10th Cir. BAP 1998).

party's *post hoc* explanation as to his or her state of mind at the time of the agreement,[11] and an obvious need for support at the time of the divorce is enough to presume that the obligation was intended as support even when it is identified as a property settlement in the Divorce Decree.[12]

Second, if the Court finds that the parties intended the obligation to be in the nature of support, then the Court must look at the substance of the obligation to determine whether it really was in the nature of support at the time of the divorce. The critical issue here involves the function served by the obligation *at the time of the divorce* and may be determined by considering the relative financial circumstances of the parties at the time of the divorce.[13] Overall, whether an obligation is in the nature of support must be viewed broadly and in a realistic manner.[14] The Plaintiff has the burden of proving both parts of the *Sampson* test by a preponderance of the evidence.[15]

**B.     Parties' Shared Intent**

As set forth above, the Divorce Decree included the property settlement and IRA account payments under the "Personal Property" section, which also included the division of several other specific personal property items. Although the property settlement and IRA account payments were each to last 15 years which is suggestive of maintenance or support, there was no indication that the obligations would terminate upon the Plaintiff's death or remarriage which is suggestive

---

[11]    *Sampson*, 997 F.2d at 723.

[12]    *Dewey*, 223 B.R. at 564 (quoting *Sampson*).

[13]    *Dewey*, 223 B.R. at 565. Because no cause of action was asserted by the Plaintiff under § 523(a)(15), the present financial circumstances of the parties are irrelevant to these proceedings.

[14]    *Id.* at 564.

[15]    *Sampson*, 997 F.2d at 723.

of property settlement. The fact that the Plaintiff specifically relinquished her rights to Knighton Optical (including back wages and overtime) in exchange for the property settlement and IRA account payments but did not relinquish other claims for child support and alimony is also indicative of property settlement.[16] And the Defendant's testimony regarding the parties' intent with respect to the property settlement and IRA account payments was at least partially corroborated by the Plaintiff's own testimony that her attorney was indeed engaged in document requests regarding Knighton Optical. All of these facts are either neutral or weigh in favor of finding that the parties intended the property settlement and IRA account obligations as property settlement rather than support.

The only facts that weigh in favor of a finding of support are the large disparity in the parties' income at the time of the divorce and the Plaintiff's physical custody of the parties' three minor children.[17] Of course, these facts alone are sufficient, in spite of the words and labels of the Divorce Decree, to establish a presumption that the obligations were intended as support. But presumptions are subject to being rebutted, and the other facts suggesting property settlement outweigh the presumption established by the disparity in the parties' income. On the evidence properly before the Court, the Court simply cannot find that the Plaintiff has shown by a preponderance of the evidence that the parties intended the obligation as support rather than property settlement.

---

[16] *Sylvester v. Sylvester*, 865 F.2d 1164, 1166 (10th Cir. 1989).

[17] *Id.*

**C.     Nature and Function of the Obligations**

Even if the Court assumes that the Plaintiff has met her burden under the first prong of the *Sampson* test regarding the parties' shared intent, the Plaintiff has failed to meet her burden under the second prong as to the actual nature and function of the obligations. With respect to the Plaintiff's financial circumstances at the time of the divorce, the only evidence before the Court is the Plaintiff's relatively consistent testimony that she needed the full $2,850/month for her and her children's survival and photocopies of 18 checks for certain expenses paid nearly three years after entry of the Divorce Decree. Even resolving all mathematical issues and estimations in the Plaintiff's favor, the checks and testimony only support monthly expenses of $1,482.58 — well short of even the $2,000/month in actual payments made by the Defendant apart from any actual or imputed income of the Plaintiff at the time of the divorce. The Plaintiff also never defaulted or became delinquent on any of her financial obligations. Other than the Defendant's statements that he did not pay rent while living in his parents' basement and that money was tight, there was no evidence or testimony regarding the Defendant's financial circumstances at the time of the divorce nor is it the Defendant's burden to come forward with such evidence.

The Court fully understands that nearly 15 years has elapsed since the Divorce Decree was entered, but the passage of time does not alleviate the Plaintiff's burden to prove her case by a preponderance of the evidence. The Court simply cannot base a ruling on the Plaintiff's allegation of need and judicial notice of the Plaintiff's general change in financial circumstances and living standard in 1992; indeed, the parties' financial circumstances almost always change in cases of divorce. The Plaintiff may well have actually needed and used all the money to which

she was entitled to support herself and her children at the time of the divorce. But on the scant evidence properly before the Court, the Court cannot find by a preponderance of the evidence that the property settlement and IRA account obligations were in the nature of and functioned as support for the Plaintiff at the time of the divorce.

### III.  CONCLUSION

It is the Plaintiff's burden to prove nondischargeability under § 523(a)(5) by a preponderance of the evidence, and the Court finds that she has failed to do so in this case for the reasons set forth above. Thus, the Court finds that both the $400/month property settlement payments and the $100/month IRA account payments were intended to be and actually were in the nature of property settlement. The Complaint shall be dismissed as to those obligations, and the Court will prepare an Order to that effect. The Plaintiff is directed to prepare a separate Order resolving the remaining issues in the Complaint as agreed by the parties or set the matter for further hearing within 30 days. Failure to do so will result in dismissal of the adversary proceeding.

------------------------------END OF DOCUMENT------------------------------



_____ooo0ooo_____

SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** will be effected through the

Bankruptcy Noticing Center to each party listed below.

L. Miles LeBaron
Tyler J. Jensen
LeBaron & Jensen, P.C.
476 West Heritage Park Blvd.
Suite 200
Layton, UT 84041
    *Counsel for Plaintiff*

Noel S. Hyde
5926 South Fashion Pointe Dr.
Suite 200-D
South Ogden, UT 84403
    *Counsel for Defendant*